AMCOR FLEXIBLES NORTH AMERICA, INC.,

      **Plaintiff,**

    v.

REYNOLDS PACKAGING, LLC,

      **Defendant and Third-Party Plaintiff,**

    v.                        **Case No. 23-C-1306**

REYNOLDS PRESTO PRODUCTS INC.,

      **Third-Party Defendant,**

    v.

WEST BEND MUTUAL INSURANCE COMPANY,

      **Intervenor.**

## DECISION AND ORDER

Plaintiff Amcor Flexibles North America, Inc. (Amcor) brought this action against Defendant Reynolds Packaging, LLC (Reynolds), asserting claims for negligence, contractual indemnification, and breach of express warranty arising out of Amcor's purchase from Reynolds of allegedly defective zippered, food-storage pouches. Amcor has abandoned its claim for negligence and now seeks summary judgment as to liability on its claims for indemnification and breach of warranty. Reynolds contends that it expressly rejected the terms and conditions of Amcor's purchase order that differed from its own. In particular, Reynolds contends that under its own terms and conditions, it is not bound by Amcor's warranty and indemnification terms and that

it expressly disclaimed any warranties for merchantability and fitness for a particular purpose. Reynolds further argues that under its own terms and conditions, its liability is limited to rework or replacement of the defective product or providing Amcor a credit for the amount it paid. As a result, Reynolds seeks summary judgment dismissing Amcor's remaining claims for indemnification and breach of express warranty. The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332. For the following reasons, Amcor's motion will be granted and Reynolds' motion will be granted as to Amcor's negligence claim but denied as to Amcor's claims for indemnification and breach of warranty.

## BACKGROUND

Amcor manufactures flexible packaging materials, including packages for food products. Amcor's Statement of Undisputed Material Facts (Amcor's SOMF) ¶ 1, Dkt. No. 72. Amcor sometimes works with other companies to complete work for its customers. *Id.* Reynolds is a "toll converter," which means it takes raw roll stock film supplied by companies like Amcor and "converts" the film into finished pouches with plastic zippers. *Id.* ¶ 2. In September 2022, Amcor engaged Reynolds to convert Amcor's plastic film into pouches for Amcor's client, Tru Fru. Tru Fru manufactures a chocolate-covered, freeze-dried fruit product. *Id.* ¶¶ 3–4. The pouches manufactured by Reynolds were to be used to package Tru Fru's product. Reynolds began work that same month. *Id.* ¶ 3.

Under its contract with Amcor, Reynolds was to convert the film into finished pouches, adding a plastic zipper for opening and closing the pouch. When Tru Fru discovered thin plastic strands, known as "angel hair," inside some of the finished pouches that Reynolds manufactured, it placed all Reynolds-produced pouches on hold and notified Amcor of the problem. Amcor issued a Supplier Corrective Action Request (SCAR) to Reynolds to determine the source of the

2

contamination and implement a fix. Reynolds determined that the angel hair problem was caused by the Hudson-Sharp machine Reynolds had purchased to attach the zipper to the pouch. Reynolds replaced the zipper track on the machine with a roller mechanism which solved the problem. In the meantime, Tru Fru submitted a claim to Amcor for reimbursement for the losses it had incurred as a result of the defective pouches. Amcor ultimately settled the claim for $2 million and now seeks indemnification from Reynolds and damages for breach of express warranty.

Amcor submitted nineteen purchase orders to Reynolds for the pouches, which included specific quantities of Tru Fru pouches that Reynolds was to convert for Amcor. *Id.* ¶ 7. Reynolds responded to Amcor's purchase orders by submitting "Order Confirmations," which confirmed the specific product, quantity, and total price for a purchase order. *Id.* ¶ 9. Amcor's purchase orders expressly stated that each purchase order was "subject to the Terms and Conditions of Purchase at https://www.amcor.com/afna-terms, which are attached hereto and incorporated by reference." Dkt. No. 79-6 at 7–10. The purchase orders further warned, "Any inconsistent or additional terms contained in any order acceptance or other vendor documents are hereby explicitly rejected and objected to." *Id.*

Section 1 of Amcor's Terms and Conditions expressly states that "this purchase order, including these general terms and conditions any specifications or attachments hereto, constitutes the sole and entire agreement between" the parties, and that Reynolds' "acceptance of this purchase order is expressly limited to the terms and conditions of this offer." Amcor's SOMF ¶ 11. Section 6 of Amcor's Terms and Conditions, the "Warranty" provision, states:

> Any goods or services purchased pursuant to this purchase order shall be subject to all warranties, either express or implied by law, including, without limitation, warranties of title, merchantability and fitness. Seller warrants that all goods provided under this purchase order shall be free from defects in design, material, workmanship, and title[.] . . . . Seller further hereby warrants that the goods and services to be furnished hereunder shall (i) be in full conformity with Buyer's

3

specifications, drawings and data, or Seller's samples, (ii) be merchantable, and (iii) that goods furnished hereunder shall be fit for the use intended by Buyer.

*Id.* ¶ 12. Section 8, the "Indemnification" provision, states: "Seller shall indemnify and hold harmless Buyer . . . from and against any and all claims, damages, losses, and expenses, including, without limitation, judgments, costs and attorneys' fees, arising out of or resulting from . . . Seller's and its subcontractor's performance . . . ." *Id.* ¶ 13.

Based on these undisputed facts, Amcor contends it is entitled to summary judgment on its claims for indemnification and breach of warranty. Although the amount of damages is in dispute, Amcor contends there is no dispute that at least some of the pouches Reynolds produced for Amcor's customer were defective and unfit for packaging Tru Fru's food product. As a result, Amcor paid Tru Fru some $2 million dollars in damages. Based upon the indemnification and warranty terms of the contract, Amcor contends that Reynolds is liable for those and any other damages resulting from its breach of warranty.

Reynolds contends that its own terms and conditions control. Reynolds' "Order Confirmations," as noted above, confirmed the specific product, quantity, and total price for a purchase order. Amcor's SOMF ¶ 9. At the bottom of each Order Confirmation, the following language appears:

> FIT FOR USE TESTING AND PACKAGE SIZE is the sole responsibility of purchaser. Orders may be subject to cancellation fee. All returns must be made within 30 days from date of shipment. Return authorizations are required, contact your account representative at 920-569-5700 for authorization. Warranty will only be given for returned product according to terms. ***For additional terms and conditions please see www.ReynoldsPackaging.com.*** Note: Toll Converting require minimum of 1,000 feet of setup and all order quantities of <5M may utilize 30% +-Waste, 10M to 29M +- 20% Waste, >30M = +-10% Waste.

Dkt. No. 75-4 at 4 (emphasis added).

Reynolds' Order Confirmations contained no direct link to Reynolds' terms and conditions, nor was there a direct link to its terms and conditions once one arrived at Reynolds' website. In order to find Reynolds' terms and conditions, one had to click on the phrase "**CONTACT US**", the sixth of eight menu options listed on the site's navigation bar. Dkt. No. 83 ¶¶ 3–7. At the bottom of the "CONTACT REYNOLDS PACKAGING" page was heading "Reynolds Packaging Welcomes you! Please download our onboarding instructions and terms. (pdf)." Clicking at that location brought one to Reynolds' "Terms and Conditions of Sale." *Id.* Exs. E, H.

The first listing of Reynolds' Terms and Conditions of Sale is "Product." Under that heading appears the following language:

> Any order placed by a Buyer, whether by oral, written or electronic means, shall be deemed to constitute an offer by the Buyer to enter into a contract to purchase Reynolds Packaging's products (the "Products") on these Terms and Conditions of Sale (the "Terms"), which shall be deemed to be incorporated into any such offer or order. The offeror order, together with these Terms, shall constitute the entire agreement between Seller and Buyer (the "Contract'). Any offer by a Buyer shall be deemed to be accepted by Seller, and a contract on the terms and conditions contained herein shall be deemed to be entered into, upon the transmittal of "Order Confirmation" to Buyer or upon Product shipment to Buyer, whichever occurs first. SELLER HEREBY EXPRESSLY OBJECTS TO, AND IS NOT BOUND BY, ANY TERMS OR CONDITIONS ON BUYER'S ORDER, CONFIRMATION FORMS OR OTHER DOCUMENTS, WHICH ATTEMPT TO IMPOSE UPON SELLER TERMS AND CONDITIONS WHICH DIFFER FROM SELLER'S STANDARD TERMS AND CONDITIONS OF SALE HEREIN, AND SHIPMENT OR OTHER PERFORMANCE BY SELLER SHALL NOT CONSTITUTE ASSENT TO ANY SUCH INCONSISTENT TERMS. BUYER'S FULL OR PARTIAL PAYMENT OR ACCEPTANCE OF DELIVERY SHALL CONSTITUTE ACCEPTANCE OF ALL OF THESE STANDARD TERMS AND CONDITIONS. We will use our best efforts to fulfill all orders, however, Seller cannot guarantee the availability of any particular product.

Dkt. No. 75-4 at 6. The same message is further conveyed under the heading "Terms and Conditions of Sale," which states:

> The obligations and rights of the party identified by the "sold to" on the front side hereof ("Buyer") and Reynolds Packaging, LLC ("Seller") shall be governed solely by these terms and conditions. The provisions of any purchase order or other

writing . . . inconsistent herewith shall not constitute a part of this contract of sale. If any of the terms and conditions hereof is not acceptable to Buyer, Buyer shall notify Seller in writing within 5 business days of Buyer's receipt of this contract of sale. . . .

*Id.* Reynolds' terms also included a limited warranty section, which included the following language, in relevant part:

**IN NO EVENT SHALL SELLER'S LIABILITY EXCEED THE PURCHASE PRICE PAID BY BUYER FOR THE DEFECTIVE OR NONCONFORMING PRODUCTS.**

**THE FOREGOING WARRANTY AND REMEDIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES AND REMEDIES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY FITNESS FOR A PARTICULAR PURPOSE AND/OR NON-INFRINGEMENT. UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OR EXPENSES OF ANY KIND, INCLUDING LOSS OF INCOME OR PROFITS OR GOODWILL, ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR WITH THE USE OR DELIVERY OF PRODUCTS FURNISHED HEREUNDER.**

*Id.*

Based on its own terms and conditions, Reynolds contends that Amcor's indemnification and breach of express warranty claims must be dismissed. Reynolds argues that because it rejected Amcor's terms and conditions, disclaimed any warranty of merchantability or fitness for a particular purpose, and limited Amcor's remedies to recovery of the purchase price for the pouches, Amcor's claims fail as a matter of law.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome

6

of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The fact that the parties filed cross-motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (cleaned up). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citation omitted). But even on issues where the moving party has the burden of proof, when the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

This case presents the classic "battle of forms" that often results from sales between commercial parties. Amcor contends that its terms and conditions apply, and Reynolds contends that it rejected Amcors' terms and conditions and that Reynolds' own terms and conditions apply. The drafters of the Uniform Commercial Code (UCC) created section 2-207 to address this precise issue. The State of Wisconsin has codified section 2-207 in section 402.207 of the Wisconsin

Statutes, and since Wisconsin is the forum state, it is that State's law that applies. Applying section 402.207 to the facts of this case, the court concludes that Amcor's terms and conditions control.

Section 402.207 ("Additional terms in acceptance or confirmation") of the Wisconsin Statutes provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > (a) The offer expressly limits acceptance to the terms of the offer;
> >
> > (b) They materially alter it; or
> >
> > (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chs. 401 to 411.

Wis. Stat. § 402.207.

Each of Amcor's purchase orders constituted an offer that expressly incorporated Amcor's terms and conditions, including the express warranties and indemnification provision. The purchase orders state explicitly that they are "subject to the Terms and Conditions of Purchase at https://www.amcor.com/afna-terms, which are attached hereto and incorporated by reference." Dkt. No. 75-4 at 3. While it does not appear that copies of Amcor's terms and conditions were attached to the invoice, the link provided took the offeree directly to a website where the terms

8

and conditions could be viewed.  This is sufficient to make clear to the offeree that the offer is not indefinite and unconditional.

Under subsection (1) of section 402.207, the Order Confirmation Reynolds sent for each of the purchase orders operated as an acceptance of Amcor's offer, including Amcor's terms and conditions, even though Reynolds has additional or different terms from those in Amcor's purchase order, unless Reynold's acceptance was expressly made conditional on Amcor's assent to the additional or different terms.  Reynold's acceptance fails to meet this requirement. It was not "expressly made conditional on Amcor's assent to the additional or different terms."

Reynolds' Confirmation Orders include no language stating that its acceptance of Amcor's offer was conditional on Amcor's assent to Reynolds additional or different terms.  Instead, the Confirmation Orders acknowledged the specific product, quantity, and total price for a purchase order, and added "Thank you for your order!"  Embedded in the text at the bottom of the Order explaining the cancellation policy, is the statement: "For additional terms and conditions please see www.ReynoldsPackaging.com."  Dkt. No. 75-4 at 4.  The Confirmation Orders do not state that Reynolds' acceptance is conditional on Amcor's acceptance of its terms and conditions, nor do they incorporate Reynolds' additional terms and conditions by reference.  Instead, the Confirmation Orders merely invite customers to go to Reynolds' website to see its additional terms and conditions.

Reynolds argues that its own terms and conditions make clear its rejection of Amcor's terms and conditions that are inconsistent with its own and its insistence that its own terms and conditions apply.  *Id.* at 6.  But Reynolds failed to make its own terms and conditions conspicuous and readily available.  Although its Confirmation Orders may have alerted Amcor to the fact that Reynolds had additional terms and conditions, it did not afford Amcor ready access to those terms

9

and conditions.  To access Reynolds' terms and conditions, one had to go to Reynolds' website, navigate to the "Contact Us" menu selection, go to the bottom of that page, and then click on the phrase "Reynolds Packaging Welcomes you!  Please download our onboarding instructions and terms. (pdf)." Dkt. No. 83.  "Onboarding instructions and terms" is a misleading label for a seller's terms and conditions of a sale.  And a Confirmation Order, which invites the offeror to a generic homepage that the party must then navigate in order to locate "onboarding instructions and terms" is insufficient to provide notice to the offeror that the acceptance is conditional on the offeror's acceptance of those terms.

Even if the Confirmation Orders were sufficient to alert Amcor to Reynolds' own terms and conditions, those terms and conditions are not sufficiently clear to prevent its acceptance from creating a contract under section 402.207(1).  Reynolds' own terms and conditions reflect an effort on the part of Reynolds to force its customers to accept its own additional terms.  But in order to prevent the formation of a contract governed by Amcor's terms and conditions, more is required. "Section 2-207(1) contains a proviso which operates to prevent an exchange of forms from creating a contract where 'acceptance is expressly made conditional *on assent to the additional . . . terms*.'" *C. Itoh & Co. (America) Inc. v. Jordan Intern. Co.*, 552 F.2d 1228, 1235 (7th Cir. 1977) (quoting UCC section 2-207(1)) (emphasis added).  Nowhere in its Confirmation Orders or its terms and conditions does Reynolds state that its acceptance is conditioned on Amcor assenting to its terms. The closest it comes is the statement: "If any of the terms and conditions hereof is not acceptable to Buyer, Buyer shall notify Seller in writing within 5 business days of Buyer's receipt of this contract of sale." Dkt. No. 75-4 at 6.  But telling a customer to notify the seller within five business days if its terms and conditions are not acceptable is not the same as saying that the seller's acceptance is conditioned on the buyer's assent to its terms.

10

In sum, the court concludes that, under section 402.207(1), Reynolds' Confirmation Orders operated as an acceptance of Amcor's purchase orders, even though Reynolds intended the agreement to be governed by terms additional to or different from those Amcor offered. This means that Reynolds' additional terms are to be construed as proposals for addition to the contract under section 402.207(2). Under subsection (2), the additional terms become part of the contract unless "(a) the offer expressly limits acceptance to the terms of the offer," or "(b) they materially alter it." Wis. Stat. § 402.207(2)(a), (b). In this case, Amcor's purchase order expressly limited the acceptance to the terms of the offer. It stated: "Any inconsistent or additional terms contained in any order acceptance or other vendor documents are hereby explicitly rejected and objected to." Dkt. No. 79-6 at 4. In addition, Reynolds' additional terms disclaiming express and implied warranties and limiting Amcor's remedies materially alter the agreement. For this reason, as well, it follows that they did not become part of the contract.

Because there is no dispute that at least some of the pouches Reynolds manufactured and sold were defective and not fit for the purpose intended, Amcor is entitled to summary judgment on its claims for indemnification and breach of warranty, with the amount of damages to be determined at trial. Reynolds' motion for summary judgment will be denied.

For completeness, the court notes that Amcor would be entitled to summary judgment on its breach of warranty claim even if Reynolds' Confirmation Orders are construed as conditioned upon Amcor's assent to Reynolds' terms and conditions. In that event, the conduct of the parties would be viewed as sufficient to establish a contract under section 402.207(3) and the UCC's gap-filler provisions would supply the warranties and buyer remedies available when defective goods cause a loss. In the absence of agreed upon terms, the express and implied warranties under sections 402.313, 402.314 and 402.315 are incorporated into the agreement. And under sections

11

402.714 and 402.715, Amcor can recover the loss resulting from Reynolds' breach, as well as incidental and consequential damages, including losses the seller had reason to know at the time of contracting.

## CONCLUSION

For the reasons set forth above, Amcor's motion for summary judgment (Dkt. No. 70) is **GRANTED** as to liability on its breach of warranty and contractual indemnification claims; Reynolds' motion for summary judgement (Dkt. No. 74) is **GRANTED-IN-PART** as to Amcor's negligence claim and **DENIED-IN-PART** as to Amcor's breach of warranty and contractual indemnification claims. The clerk is directed to schedule a telephone conference with the parties for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of June, 2026.

William C. Griesbach
United States District Judge

12