# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

AMCOR FLEXIBLES NORTH AMERICA, INC.,

        **Plaintiff,**

    v.

REYNOLDS PACKAGING, LLC,

        **Defendant and Third-Party Plaintiff,**

    v.                          **Case No. 23-C-1306**

REYNOLDS PRESTO PRODUCTS INC.,

        **Third-Party Defendant,**

    v.

WEST BEND MUTUAL INSURANCE COMPANY,

        **Intervenor.**

---

## DECISION AND ORDER GRANTING REYNOLDS PRESTO PRODUCTS INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE THE OPINIONS OF MATTHEW FURRER

---

Plaintiff Amcor Flexibles North America, Inc. (Amcor) brought this action against Defendant Reynolds Packaging, LLC (Reynolds), asserting claims for negligence, indemnification, and breach of warranty arising out of Amcor's purchase from Reynolds of allegedly defective zippered, food-storage pouches. West Bend Mutual Insurance Company (West Bend), Reynolds' insurer, intervened seeking declaratory relief on its duty to defend and/or indemnify Reynolds. Reynolds then filed a third-party complaint against Third-Party Defendant Reynolds Presto Products, Inc. (Presto), the manufacturer of the zipper component used in the

pouches, asserting claims for negligence, breach of implied warranty, and indemnification/contribution. Reynolds' claims for negligence and indemnification have been dismissed, leaving only its claim against Presto for breach of warranty. The court has jurisdiction over Amcor's claims against Reynolds under 28 U.S.C. § 1332 and Reynolds' claims against Presto pursuant to 28 U.S.C. § 1332 and/or 1367. The court's jurisdiction over West Bend's claim for declaratory relief arises under 28 U.S.C. § 1367. The case is currently before the court on motions for summary judgment filed by Amcor, Reynolds, and Presto. Amcor and Reynolds' summary judgment motions are addressed in a separate order. This order will address Presto's motion for summary judgment on Reynolds' remaining claim against it and Presto's motion to exclude the testimony of Reynolds' expert. Dkt. Nos. 65, 68. For the following reasons, both of Presto's motions will be granted.

## BACKGROUND

Amcor manufactures flexible packaging materials, many of which are used to package food products. Tru Fru, one of Amcor's customers, ordered zippered, food-storage pouches for its chocolate-covered frozen and/or freeze-dried fruit products. Amcor subcontracted with Reynolds to produce the pouches from the film Amcor provided, and Reynolds purchased the plastic zippers that made the pouches resealable from Presto. Reynolds incorporated the zippers into the pouches and then shipped the finished product to co-packers to be filled with Tru Fru product. During the packaging process, a fuzz-like plastic contaminant known as "angel hair" was found in some of the packages. In late December 2022, Amcor informed Reynolds of the problem and demanded that Reynolds participate in a supplier corrective action to determine the cause of the angel hair and the steps needed to prevent a recurrence.

2

The process of assembling and adhering the zippers and film to make the Tru Fru pouches is referred to as "toll" converting. Reynolds used two different machines to produce the zippered pouches: the Hudson-Sharp machine and the Sun Centre machine. As a result of the investigation conducted by Amcor, Reynolds, and Hudson-Sharp, it was determined that at least one cause of the angel hair was the guide used on the Hudson-Sharp machine. Unlike the Sun Centre machine, the Hudson-Sharp machine had a sharp edge that was creating plastic shavings (angel hair) from the zipper material fed through the zipper track. To prevent recurrence of the problem, Reynolds had a new "guideless" system installed on the Hudson-Sharp machine, which replaced the zipper guide with a series of rollers. The installation of the new guide on the Hudson-Sharp machine solved the problem. Ultimately, Sun Centre pouches were found not to contain angel hair and were released by Tru Fru for sale to its consumers. The Hudson-Sharp pouches, however, could not be sold and are the subject of Amcor's action against Reynolds and Reynolds' third-party action against Presto.

Reynolds first began placing orders with Presto in 2019, three years before the Tru Fru angel hair incident. Reynolds would order zippers from Presto by issuance of a purchase order that listed the item requested, a description, the quantity, and the price. Dkt. No. 67-3 at 8. Reynolds' purchase orders did not reference any terms and conditions of sale. Presto would then confirm the order and either ship the zippers to Reynolds or Reynolds would pick the zippers up at Presto's warehouse. Upon shipping or pick-up, Presto would email an invoice to Reynolds. *Id*. ¶ 28. For every zipper order Reynolds placed, Presto sent the same invoice. *Id*. ¶¶ 36–37. Each invoice included three numbered pages—page one included the purchase order number and the product sold and stated, in relevant part:

> The above materials are shipped subject to the terms and conditions on the face and back hereof (and acknowledgement copy if any). These constitute the sole terms

3

and conditions of the contract.  Acceptance of the shipment by you constitutes acceptance of such terms and conditions.

*Id.* ¶ 30.  Pages two and three of Presto's invoice included the terms and conditions which, in relevant part, read as follows:

REYNOLDS PRESTO PRODUCTS, INC.'S TERMS AND CONDITIONS: The terms and conditions hereinafter set forth shall supersede the terms and conditions of Buyer's order in the event of contradiction or inconsistency herewith, and no understanding, agreement, term, condition or trade custom at variance herewith shall be binding on Reynolds Presto Products, Inc.  Acceptance of delivery of any shipment hereunder shall constitute acceptance of Reynolds Presto Products, Inc.'s terms and conditions.

EXAMINATION - CLAIMS: Buyer should examine each shipment promptly upon arrival.  ALL CLAIMS OF ANY NATURE, WHICH ARE NOT MADE TO REYNOLDS PRESTO PRODUCTS, INC. IN WRITING WITHIN 30 DAYS AFTER ARRIVAL OF GOODS AT DESTINATION, ARE WAIVED. . . . Buyer will afford Reynolds Presto Products, Inc.'s representative reasonable opportunity to examine and test the material which is the basis for the claim.  As a condition for refund or credit, Reynolds Presto Products, Inc. may request Buyer to return to Reynolds Presto Products, Inc., transportation charges collect, the material upon which the claim is made in as good condition as when received by the Buyer.  No claim against Reynolds Presto Products, Inc. shall be made or allowed or credit given for the merchandise returned without prior authority by Reynolds Presto Products, Inc. in writing.  In the event the material is received in damaged condition not acceptable for use, or an order is received short, Buyer shall immediately notify the appropriate Customer Service Department.  A copy of the delivery carrier's receipt, indicating the damage or shortage and the disposition of the damaged material, must accompany this notification . . . .

REYNOLDS PRESTO PRODUCTS, INC.'S LIABILITY: Buyer assumes all risk and liability for loss, damage or injury to persons or property of Buyer or others arising out of the resale or use, either singly or in combination with other substances, or storage, transportation or possession of any material sold hereunder. Maximum liability of Reynolds Presto Products, Inc., if any, due to inferior quality or defective condition, delay, failure to ship or from any other cause shall be to refund if paid or otherwise to credit to Buyer, the purchase price of that part of the material which is inferior in quality, defective, unshipped or subject to such other cause as may be the basis of claim.

WARRANTIES: Reynolds Presto Products, Inc. makes no warranties in regard to any material sold hereunder, except that such material shall conform to Reynolds Presto Products, Inc.'s specifications either as in effect at the time of shipment or as incorporated herein.  THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY

4

OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND OF ANY OTHER OBLIGATION ON THE PART OF REYNOLDS PRESTO PRODUCTS, INC.

*Id.* ¶¶ 32–34; Dkt. No. 67-9 at 3–4.

Based upon these undisputed facts, Presto argues that Reynolds' claim for breach of warranty fails as a matter of law. Presto contends that (1) Reynolds' implied warranty claim was disclaimed under Presto's terms and conditions; (2) Reynolds waived all claims by failing to submit a written claim to Presto within 30 days of receipt of the product; and (3) Reynolds has presented no evidence that the zippers Presto sold Reynolds were defective or in breach of warranty.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Reynolds' Claim Fails Under Presto's Terms and Conditions

Presto argues it is entitled to summary judgment on Reynolds' claim for breach of warranty because Presto disclaimed all express and implied warranties in its terms and conditions of sale and because Reynolds failed to submit a written claim to Presto within 30 days of receiving the

5

zippers as those same terms and conditions require. Reynolds argues in response that the sale was not subject to Presto's terms and conditions. Reynolds contends that under Wisconsin law, which both sides agree controls, Presto's invoice with its terms and conditions must be considered a counter-offer. And since it did not accept Presto's counter-offer with its terms and conditions, Reynolds contends they do not control.

Section 402.207 ("Additional terms in acceptance or confirmation") of the Wisconsin Statutes, which codifies § 2-207 of the Uniform Commercial Code, provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > (a) The offer expressly limits acceptance to the terms of the offer;
> >
> > (b) They materially alter it; or
> >
> > (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chs. 401 to 411.

Wis. Stat. § 402.207.

Viewing its own purchase order as an offer, Reynolds argues that Presto's confirmation constitutes its acceptance and that Presto's acceptance was not conditional on Reynolds' assent to any additional terms and conditions. As a result, Reynolds contends that the terms and conditions in Presto's invoices must be seen as a proposal for additional terms within the meaning of section

6

402.207(2). And because they materially altered the terms of Reynolds' purchase order/offer, Reynolds contends that they did not become part of the contract in the absence of its consent.

Presto cites *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.*, 91 F.3d 1002 (7th Cir. 1996), in support of its contention that the terms and conditions set forth in its invoices nevertheless became part of the agreement. In that case, Industrial Engineering had been purchasing steel castings from Waukesha Foundry over a four-year period. *Id.* at 1004. Industrial Engineering would place orders via telephone and fax an order confirmation. *Id.* at 1003. Waukesha Foundry included a packing slip with each order and followed it with an invoice, both of which included terms and conditions of sale that limited remedies and disclaimed any warranties of merchantability or fitness for use. *Id.* at 1003–04. Waukesha Foundry sent Industrial Engineering over 200 packing slips and invoices over a four-year period. *Id.* at 1004. And Industrial Engineering availed itself of remedy provisions contained in Waukesha Foundry's terms several times. *Id.*

The Seventh Circuit affirmed the district court's grant of summary judgment, concluding that the additional and different terms in Waukesha Foundry's packing slip and invoice had become part of the contract based on the parties' course of dealing. *Id.* at 1008. Applying UCC § 2-207 (Wis. Stat. § 420.207) in light of UCC § 1-205 (Wis. Stat. § 401.303), which addresses course of dealing and usages of trade, the court reasoned that Industrial Engineering had consented to terms and conditions set forth in Waukesha Foundry's invoices. Quoting its previous decision in *Union Carbide Corporation v. Oscar Mayer Foods Corporation*, the court explained:

> Even if the alteration is material, the other party can, of course, decide to accept it . . . . Put differently, consent can be inferred from other things besides the unsurprising character of the new term: even from silence, in the face of a course of dealings that makes it reasonable for the other party to infer consent from a failure to object.

7

*Id.* at 1009 (quoting *Union Carbide*, 947 F.2d 1333, 1336 (7th Cir. 1991)). Based on the undisputed facts of the case before it, including the facts that Industrial Engineering had received over 400 packing slips and invoices between 1989 and 1993, Industrial Engineering availed itself of the remedies specified in the terms, the parties were engaged in an ongoing relationship, Industrial Engineering never objected to the terms, and there was a "substantial degree of interpersonal contact" between employees of the two companies, the court concluded that Industrial Engineering had consented to Waukesha Foundry's terms and conditions. *Id.*

The facts of this case mirror those of *Waukesha Foundry.* It is undisputed that Reynolds received Presto's terms almost 200 times over several years, during which time Presto representatives regularly communicated with and visited Reynolds's facility. Dkt. No. 67, ¶¶ 8–10. Further, Reynolds took advantage of various provisions contained therein, including the clauses governing "examination" and return of goods. *Id.* ¶ 35. And Reynolds never objected to the terms. *Id.* ¶¶ 38–39. As in *Waukesha Foundry*, these facts "lead to the ineluctable conclusion" that Reynolds consented to the terms and conditions contained in Presto's invoices. 91 F.3d at 1009. It thus follows that the transaction between Reynolds and Presto is governed by Presto's terms and conditions.

Under Presto's terms and conditions, Reynolds' claim fails. Presto's terms contain a conspicuous written disclaimer of implied warranties of merchantability or fitness for a particular purpose. As a result, Reynolds cannot prevail on its remaining claim of breach of implied warranty. Also under Presto's terms, "all claims of any nature, which are not made to [Presto] in writing within 30 days after arrival of goods at destination, are waived." Dkt. No. 67-9 at 4. It is undisputed that Reynolds did not give Presto written notice of its claim within 30 days of the

8

delivery of the zippers. For this reason, as well, Reynolds' claim fails and Presto is entitled to summary judgment.

**B. Presto's Claim Fails on the Merits**

Even if Presto's terms and conditions were not included in the contract, Reynolds' claim would still fail because Reynolds has offered no admissible evidence that Presto breached an implied warranty of fitness for a particular purpose, which is the only warranty claim Reynolds asserted. Under the UCC and Wisconsin law, an implied warranty of fitness for a particular purpose arises where the seller knows or has reason to know of a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. Wis. Stat. § 402.315; UCC § 2-315. The statutory comment explains what "particular purpose" means:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Wis. Stat. § 402.315 (editors' notes).

Reynolds admits that it never told Presto that the zippers would be on the Tru Fru pouches. Dkt. No. 88, ¶ 21. Reynolds also admits that it did not ask Presto to recommend a zipper for the Tru Fru pouches. *Id.* ¶ 22. Although Reynolds had previously asked Presto for a zipper that could seal to a specialized film substrate called ASBX, Reynolds does not contend that it was unable to properly affix the zippers it purchased from Presto to the film Amcor provided for the pouches. Moreover, Presto encouraged Reynolds to test the zippers as much as it desired prior to purchase and stated in writing that Reynolds was required to perform its own fitness for use testing. *Id.* ¶ 16

9

(citing Dkt. Nos. 67-7 & 67-5 at 6). Although Reynolds' responses to many of Presto's proposed findings of fact attempt to recharacterize the fact asserted and introduce additional, unrelated facts by citing to its voluminous exhibits filed as one continuous document (Dkt. Nos. 89, 105), the court concludes that the foregoing facts are undisputed. Based upon those facts, no implied warranty for fitness for a particular purpose arose and Reynolds' claim for breach of such an implied warranty fails.

Reynolds alternatively argues that Presto breached the implied warranty of merchantability that arises under section 402.314. In the event the court concludes that the evidence is not sufficient to support a claim for breach of the implied warranty of fitness for a particular purpose, Reynolds asks that it be granted leave to amend its third-party complaint to add such a claim. Again, an implied claim for breach of the warranty of merchantability is disclaimed under Presto's terms and conditions. But even if Presto's disclaimer was ineffective and Reynolds had asserted such a claim, the result would be the same.

As applicable here, goods are merchantable within the meaning of section 402.314 if they "[p]ass without objection in the trade under the contract description" and they "[a]re fit for the ordinary purposes for which such goods are used." § 402.314(2)(a), (c). To prevail on a claim for breach of the implied warranty of merchantability under section 402.314 based on alleged defects in goods, the party asserting the breach must show a connection between any alleged defects they observed and any damages they suffered. *Taizhou Yuanda Inv. Grp. Co., Ltd. v. Z Outdoor Living, LLC*, 522 F. Supp. 3d 476, 487 (W.D. Wis. 2021). In other words, to prevail on its claim that Presto is liable for the damages Amcor seeks against it, Reynolds must prove that the zippers Presto sold Reynolds were defective and were the cause of the angel hair found in the pouches

10

Reynolds manufactured that led to the loss of Tru Fru's product. Reynolds has failed to make a showing that it can do so.

Presto has submitted proposed findings of fact in accordance with the local rules of the district establishing that the product Tru Fru was unable to sell because of angel hair contamination was packaged in pouches to which Reynolds attached Presto zippers using its Hudson-Sharp machine. This is precisely what the joint investigation conducted by Amcor, Reynolds, and Hudson-Sharp concluded. Dkt. No. 67, ¶ 51. Amcor found that none of the Tru Fru pouches converted on Reynolds' Sun Centre machine contained angel hair and, as a result, the Sun Centre pouches were released for sale to customers. *Id.* ¶ 52. Amcor's claim against Reynolds is thus limited to the losses resulting from Tru Fru product packaged in the Hudson-Sharp pouches.

Reynolds purports to dispute Presto's factual contention that the angel hair problem was limited to the Hudson-Sharp pouches. It points to an email from Enfield Farms, one of Tru Fru's packers, noting they "had some findings in the 6oz and Cluster pouches," indicating that that meant that "non-Hudson pouches likely have an issue as well." Dkt. No. 85 at 9 (citing email chain from Enfield Farms, Dkt. No. 89-1 at 197–98). The term "findings" is left undefined, however, and the person making such findings was never deposed. More importantly, as Presto points out, Amcor's account manager responded to Enfield Farms, noting that Amcor's "QA team inspected all the 6oz pouch retains yesterday, and found no trace of angle [sic] hair." Dkt. No. 89-1 at 197. After further analysis, Amcor determined there was "no angel hair or similar-type fibers in the pouch retains from the Sun Centre productions." Dep. of Cherie Henry, Dkt. No. 96-2 at 235:13–16. And ultimately, the pouches produced on the Sun Centre machine were released for sale.

In the face of the sworn testimony concerning the joint investigation of the problem, the solution that resolved the problem, and the fact that only pouches produced on Reynolds' Hudson-

11

Sharp machine were discarded, the unsubstantiated and vague email from Enfield Farms is not enough to withstand summary judgment in Presto's favor. The only other evidence that Reynolds offers in support of its contention that Presto's zippers were defective is the opinion of Matthew Furrer, its expert. But Furrer's opinion, which Presto claims is inadmissible under Rule 702 of the Federal Rules of Evidence, is inadmissible and therefore insufficient to preclude summary judgment in Presto's favor.

## C. Presto's Motion to Exclude Expert testimony

Furrer, a mechanical engineer, does not dispute the finding of the joint investigation that the zipper guide originally on the Hudson-Sharp machine was a cause of the angel hair in the finished Tru Fru product. Dep. of Matthew Furrer, Dkt. No. 69-1 at 92:10–14. In fact, Furrer did not analyze the zipper guide and made no attempt to determine whether the machine caused the problem. Nor does Furrer dispute that once the Hudson-Sharp zipper guide was modified, no further angel hair contamination was noted. *Id.* at 97:09–98:05. Instead, Furrer's opinion was that there could have been another cause of the angel hair contamination, namely, that the zippers provided by Presto were defective in that they had angel hair accumulations at the time the zipper material was delivered to Reynolds and before it was incorporated into the pouches.

Furrer bases his opinion on a test he conducted or had Reynolds personnel conduct on two spools or rolls of zipper material from a package that had been previously rejected by Reynolds as "nonconforming" with the notation "strings present." *Id.* at 126:05–25. The test consisted of separating or un-mating the two sides of the zipper material and then running both sides through felt pads to determine if there were any loose fibers on either half of the zipper material. *Id.* at 107:08–24. Based on the fact that loose fibers were found in the collection area, Furrer concluded that the zipper material Presto provided to Reynolds could have been defective and that the

12

Hudson-Sharp zipper guide was not the sole cause of the angel hair contamination. *Id.* at 166:09–67:04.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Applying Rule 702, the trial court acts as a gatekeeper to ensure that the proffered testimony "is not only relevant, but reliable." *Id.* at 872. "In performing this role, the district court must engage in a three-step analysis, evaluating: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Id.* (internal quotation marks and citation omitted). Rule 702 was recently amended to make clear that "expert testimony may not be admitted unless the proponent demonstrates to the court that 'it is more likely than not' that the proffered testimony meets the admissibility requirements set forth in the rule." Rule 702, 2023 Advisory Comm. Notes. The amendment was "motivated by [the Committee's] observation that in 'a number of federal cases . . . judges did not apply the preponderance standard of admissibility to [Rule 702's] requirements of sufficiency of basis and reliable application of principles and methods, instead holding that such issues were ones of weight for the jury.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021) (quoting Advisory Comm. on Evidence Rules, Agenda for Committee Meeting 17 (Apr. 30, 2021)). The amendment confirms "the indispensable nature of district courts' Rule 702 gatekeeping function in all cases in which expert testimony is challenged on relevance and/or reliability grounds." *Id.* at 284.

Presto argues that Furrer fails all three of the admissibility requirements of Rule 702. It argues that as a mechanical engineer with little to no education in the areas of polymers or material science, or work experience in flexible packaging, Furrer is not qualified to testify as an expert in

13

this case.  Presto further argues that Furrer's methodology, i.e., the test he performed or had Reynolds personnel perform on a previously rejected package of zippers, is unreliable.  Finally, Presto argues that the opinion Furrer offered is irrelevant to the issues in the case.  That issue is whether the zippers utilized in manufacturing the pouches used to package Tru Fru's product were defective and unmerchantable.  Based on the test he performed on zipper material previously rejected by Reynolds, Furrer concluded that there could have been loose strands on the spools of zipper material actually used by Reynolds to manufacture the Tru Fru pouches.  Dkt. No. 69-1 at 167:15–16.  Importantly, Furrer admitted that he could not say that the zipper materials incorporated into the Tru Fru pouches were defective or unmerchantable.  *Id.* at 168:25–69:05.  Furrer also acknowledged that the Hudson-Sharp machines used by Reynolds in the production process could be a cause of the angel hair contaminant.

Regardless of whether Furrer is qualified by his education, training, or experience, the court is satisfied that Reynolds has failed to establish by a preponderance of the evidence that his methodology is reliable or that the proffered testimony is relevant.  Furrer's methodology involved conducting a test that had little resemblance to the actual operation of the machines used to produce the pouches, and the test was conducted on zipper material that had previously been rejected by Reynolds as nonconforming because of the presence of strings.  It is undisputed that this rejected material was not used to produce the pouches that were delivered to Tru Fru's co-packagers and were later found to contain the angel hair contaminant.  This is not a test that could produce a reliable answer to the question of whether the zipper material actually used to produce the Tru Fru pouches was defective.

As a result, Furrer is unable to offer more than speculation as to whether the zipper material actually utilized in the Tru Fru pouches was defective.  His opinion that it could have been

14

defective is insufficient to assist the factfinder. It is therefore irrelevant and thus inadmissible under Rule 702. For these reasons, Furrer's proffered testimony is inadmissible and Presto's motion to exclude such evidence will be granted. In the absence of admissible evidence that would support Reynolds' claim that the zipper material Reynolds purchased from Presto and incorporated into the Tru Fru pouches was defective and unmerchantable, its claim against Presto fails on the merits even if Presto's disclaimers were ineffectual.

## CONCLUSION

For the reasons set forth above, Presto's motion for summary judgment (Dkt. No. 65) is **GRANTED**. Presto's motion to exclude the expert opinion of Matthew Furrer (Dkt. No. 68) is also **GRANTED**. Reynolds' third-party claim against Presto is dismissed.

**SO ORDERED** at Green Bay, Wisconsin this <u>3rd</u> day of June, 2026.

William C. Griesbach
United States District Judge